UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  Cr. No. 15-20462

        v.                            District Judge David M. Lawson

CURTIS LEE WILLIAMS,

        Defendant.
_____/

**REPLY BRIEF IN SUPPORT OF CURTIS WILLIAMS'S
MOTION FOR COMPASSIONATE RELEASE**

Four points warrant reply to the government's opposition to Curtis Williams's motion for compassionate release.

1. **The government seems to concede Williams's age, in combination with the pandemic, is an "extraordinary and compelling reason" for release.**

Although the government states "[t]here are no extraordinary and compelling reasons to grant Williams compassionate release," the government later states that "Williams's age satisfies the requirements for release in USSG § 1B1.13 cmt. n. 1 when considered in combination with the Covid-19 pandemic." (*Compare* R. 55, Gov. Resp. at PgID 237, *with* PgID 243.) Indeed, Williams's age, according to the CDC, puts him at increased risk of serious illness or death from COVID-19.

1

Mr. Williams's age alone thus warrants release, especially in light of his family circumstances and rehabilitation. On this point, *United States v. Pena*, No. CR 16-10236-MLW, 2020 WL 2798259 (D. Mass. May 29, 2020), is instructive. There, the court found that the movant, age 70, "by virtue of his age alone face[d] a significant risk of being hospitalized and also a risk of dying" if infected by COVID-19. *Id.* at *7. The court explained that the pandemic "has created unforeseen and extreme risk to the health of inmates generally, and particularly to those who are 65 and older." *Id.* The court thus found the movant eligible for compassionate release.

**2. Williams's medical records reveal a heightened risk from prediabetes.**

Williams's medical records, obtained through government counsel, also reveal that he is not as healthy as he may have indicated in his pro se filing because he suffers prediabetes. Prediabetes is diagnosed when a person's blood sugar level is higher than it should be but not high enough for to diagnose diabetes.

The government remarks that "Williams's prison medical records do not reveal any health conditions related to the Covid-19 risk factors." (R. 55, Gov. Resp., PgID 243.) But although the CDC does not specifically list *pre*diabetes as a risk factor, it recognizes diabetics as people at a high risk of severe illness from COVID-19. CDC, *At Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. And courts have found

2

prediabetes also places incarcerated people at a higher risk from COVID-19. *See United States v. Readus,* No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (recognizing courts have found "combination of prediabetes and obesity have been sufficient to warrant release"); *United States v. Sosa*, No. 19-CR-39-02-JD, 2020 WL 2227038, at *1 (D.N.H. Apr. 21, 2020), *rep. & rec. adopted*, No. 19-CR-39-02-JD, 2020 WL 2219173 (D.N.H. May 6, 2020) (finding prediabetes and obesity warranted pre-sentencing release); *United States v. Dhavale*, No. 19-MJ-00092, 2020 WL 1935544, at *6 (D.D.C. Apr. 21, 2020) (granting temporary pretrial release and noting "the government does not contest that defendant suffers from prediabetes and hypertension, which puts him at higher risk for more severe, debilitating illness from COVID-19").

Here, Mr. Williams was diagnosed with prediabetes a year ago, in May 2019. *See* Selected Medical Records, attached, at 1. Since then, he has worked to change his diet and exercise more frequently, but nevertheless, his lab work from March 2020 still reveals a hemoglobin A1c count—a test that measures average blood sugar level for the past two to three months—in the "increased risk" range. *Id.* at 2; *see also* Mayo Clinic, *A1C Test Description*, https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643.

3

Thus, looking at Mr. Williams's age, and the risk of progressing prediabetes, this Court should find that Mr. Williams meets the standard in § 1B1.13, cmt. n.1(B), in that he has a "physical" condition that "substantially diminished the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

### 3. This Court should refuse to impose an "issue exhaustion" requirement.

The government argues that this Court should require "issue exhaustion," citing *United States v. Alam*, No. 20-1298, 2020 WL 2845694 (6th Cir. June 2, 2020). (R. 55, Gov. Resp., PgID 235-36.) But neither *Alam* nor the text of § 3582(c)(1)(A) imposes an "issue-exhaustion" requirement, and as explained in Williams's initial brief, such a rule is in fact contrary to the text of the statute, which by referring to § 3553 mandates that courts evaluate up-to-date information about a movant's characteristics and rehabilitation.

Moreover, if the text alone is not reason enough, the Supreme Court also holds that issue exhaustion should not be required where "an administrative proceeding is not adversarial," and "the reasons for a court to require issue exhaustion are much weaker." *Sims v. Apfel*, 530 U.S. 103, 109 (2000) (citations omitted). The Court held that issue exhaustion was inappropriate in Social Security proceedings where neither party is represented by counsel and the proceedings are "inquisitorial rather than

4

adversarial." *Id.* Requests for compassionate release within the BOP are even less adversarial than Social Security proceedings.

This Court should look to *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *4 (S.D. Iowa Apr. 29, 2020). There, like here, 30 days had lapsed since the movant asked the warden for compassionate release, but he filed the request "before COVID-19 entered the lexicon." *Id.* Citing *Sims*, the court explained that "issue exhaustion is inappropriate because § 3582 contains no such requirement and BOP compassionate release requests are not adversarial proceedings." *Id.* The court noted, there "are no proceedings," and the process is entirely non-adversarial: "[a] prisoner makes a request, and the warden decides whether to release the prisoner." *Id.* The warden acts as a judge, and there are no prosecutors or defense attorneys to make arguments for or against release. "Such a process more closely resembles the inquisitive Social Security proceedings in *Sims* than the adversarial proceedings before this Court." *Id.* Issue exhaustion is thus inappropriate, and this Court may consider all grounds raised for compassionate release.

### 4. Williams's family circumstances fall under § 1B1.13, cmt. n. 1(D).

The government argues that Williams cannot invoke Guideline policy statement § 1B1.13, cmt. n. 1(D) because the subpart (D) is limited to reasons articulated in the BOP program statement. (R. 55, Gov. Resp., PgID 238-39.) But

5

the better reading of subpart (D) is this Court "may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)." *United States v. Redd,* No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020). The First Step Act "eliminated the BOP Director's role as the *exclusive* channel through which a sentence reduction could be considered by courts." *Id.* Thus, the reference in subpart (D) to determinations by the BOP director is "vestigial and inoperative." *Pena*, 2020 WL 2798259, at *8. Those other reasons exist here because of the advanced age of Williams's remaining family, especially when the Court considers his own advanced age and the pandemic ravaging the BOP.

    **5. Supervision conditions can ensure Mr. Williams is not a danger.**

The government argues that Williams has not explained how his good institutional record and caring family apply as factors under 18 U.S.C. § 3553(a), and that he remains a danger to the community. (R. 55, Gov. Resp., PgID 247.) But under *Pepper v. United States*, 562 U.S. 476, 490–93 (2011), the Court must consider post-offense developments under § 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." *Id.* at 492.

After considering all of the circumstances in this case, this Court should conclude that the more than five years that Mr. Williams has served in custody sufficiently serves the purposes of sentencing given his family circumstances, age, and institutional conduct.

Approaching 70 years old, Mr. Williams accepts responsibility for his prior mistakes and fully appreciates, and lives each day with, the repercussions of his actions. Mr. Williams's sincere remorse for his actions is best demonstrated by his institutional record in the Bureau of Prisons. He has no recent disciplinary history. He completed the drug-education course. He also maintains close contact with his family, who has been in contact with counsel and has written to this Court in support of his release. Mr. Williams is ready to comply with whatever conditions of community supervision this Court deems appropriate, including home confinement. This Court should not hesitate to order his release.

        Respectfully Submitted,

        s/Benton C. Martin
        FEDERAL DEFENDER OFFICE
        Benton_Martin@fd.org
        613 Abbott St., Suite 500
        Detroit, MI 48226
        Phone: 313-967-5832

Dated: June 8, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                Cr. No. 15-20462

        v.                       District Judge David M. Lawson

CURTIS LEE WILLIAMS,

        Defendant.
_____/

## **CERTIFICATE OF SERVICE**

    I certify that on June 8, 2020, I filed the foregoing paper with the through the court's electronic docketing system, which will send notification to opposing counsel of record.

                                         */s/Benton C. Martin*