UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                      Case Number 15-20462

v.                                                        Honorable David M. Lawson

CURTIS LEE WILLIAMS,

        Defendant.

_____/

## **AMENDED ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**

Before the Court is defendant Curtis Williams's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Because the relevant factors favor Williams's position, the Court will grant the motion.

I.

Defendant Curtis Williams pleaded guilty to one count of bank robbery, 18 U.S.C. § 2113(a), (d). On March 16, 2016, the Court sentenced him to 120 months in prison. He has served just over 51 months or 42% of that term, and he presently is confined by the Bureau of Prisons at FCI Gilmer in Glenville, West Virginia, a medium security facility that houses more than 1,400 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on September 1, 2023.

On January 27, 2020, Williams sent a letter to the Court requesting compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. In his motion, Williams asserted that he was qualified for release based on his age (68), and he also stated that his release would allow him to care for his sisters, aged 69 and 74, whose health was declining. He also stated that his incarceration had been particularly personally devastating because, shortly after he was committed to prison, his son was murdered, and his daughter committed suicide. The

Court appointed counsel and set deadlines for both sides to file supplemental briefs. The initial letter did not indicate whether Williams had submitted a request for release to prison authorities, but his supplement indicated that on February 23, 2020 he sent a letter to the warden seeking compassionate release. *See* ECF No. 54-4. He apparently has not received a response.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases at the Gilmer facility, but six inmates previously infected have recovered. Reports indicate that no inmates or staff have died. *See* https://www.bop.gov/coronavirus/.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden. "Even though [the] exhaustion requirement does

not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." *Id.* at 833-34 (quotations omitted).

Williams argues that compassionate release is warranted based on his family circumstances, where release to home confinement would allow him to care for his elderly sisters whose health is failing, and the risk to his own health posed by the ongoing coronavirus pandemic, due to his age placing him in a recognized high risk category. The government opposes the motion, citing William's history of other bank robbery crimes, and pointing out that Williams does not report any underlying health conditions, and the risk he faces at Gilmer is low because the BOP has reported no active COVID-19 cases there. The government also contends that Williams did not properly exhaust his request for release, because he did not articulate any argument based on COVID-19 in his February letter to the warden.

A. Exhaustion

Williams's request for release based on "extraordinary and compelling circumstances" was exhausted properly under the circumstances presented here.

*First*, the Court expressly ordered the parties to renew their briefing on the request for release after the gravity of the circumstances surrounding the global pandemic became of general concern. The order for renewed briefing was issued in May 13, 2020, after the threat of the pandemic had resulted in drastic measures being taken by public authorities, including the closure of the Court's own public facilities, which remain inaccessible to the general public. *See* E.D. Mich. Admin. Order 20-AO-038 (July 2, 2020). The most recent available figures indicate that, far from abating, the spread of the COVID-19 disease rapidly has accelerated in most states,

including in West Virginia, which reported a daily record high of 105 new cases on July 5, 2020. *See* Daily Confirmed New Cases (WV): https://coronavirus.jhu.edu/data/new-cases-50-states/west-virginia. In light of those particular concerns, which prompted the Court to appoint counsel and direct renewed briefing, the supplement filed by counsel amounts to a refiled or renewed motion for judicial review, and it is undisputed that the renewal of the motion was filed well beyond the 30-day waiting period after the February administrative request.

*Second*, federal courts confronted with the argument now raised by the government generally have been skeptical of the notion that the statute imposes any requirement of "issue exhaustion" on requests for compassionate release, or that a prisoner explicitly must mention the pandemic as a basis of his administrative request, or else submit and exhaust a fresh request on that ground — and wait yet another 30 days — before seeking judicial review. *United States v. Garner*, No. 14-13, 2020 WL 3632482, at *3 & n.2 (S.D. Tex. July 3, 2020) ("This question of 'issue exhaustion' has not been addressed by the Fifth Circuit Court of Appeals, and it may well be applicable in certain situations. However, the Court is not persuaded that it applies in this case, primarily for the reasoning offered by the Government elsewhere in its response: COVID-19 does not constitute an independent basis for . . . compassionate release.") (collecting cases); *see also Miller v. United States*, No. 16-20222, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020) ("[T]he Government argues that Miller's exhaustion should not be honored, because he did not specify requesting release due to the COVID-19 outbreak. The Court finds this argument to be unfounded. Miller, then and now, seeks release due to his myriad of serious health conditions. The COVID-19 pandemic merely accentuates his meritorious claims for release.").

Here, the statutory ground for the request has not changed from when it first was submitted; the defendant seeks now, as he did at the administrative level, release based on "extraordinary and

compelling circumstances," under the authority of 18 U.S.C. § 3582(c)(1)(A)(i). He described several circumstances in his administrative petition that he felt were extraordinary and compelling. He now advances others, which have arisen since the request first was tendered. But the underlying authority and ground for the relief sought has not changed, and it would be inappropriate under the circumstances to impose any further exhaustion requirement, which in any event is not mandated in any plain terms of the statute. *See Garner*, No. 14-13, 2020 WL 3632482, at *3 (S.D. Tex. July 3, 2020) ("Defendant has not changed the underlying basis of his request for . . . compassionate release by this motion; to the contrary, he argues that COVID-19 renders him even more medically vulnerable than before. In short, Defendant argues that the COVID-19 pandemic increases his already-existing medical vulnerability, which he has already exhausted."). The BOP certainly well knew, and now knows, about the pandemic and the risks to inmates, as its published reports and directives evidence. It has had more than ample time to act on the defendant's February request, having before it all of the pertinent information about both the defendant and the circumstances that pose risks to his health. As one district court aptly observed:

> The statute does not require issue exhaustion as argued by the United States and even if the Court was inclined to impose that requirement, it would be futile. The Court is frustrated by the fact that the warden has apparently ignored the first request. There is nothing in the record to suggest a second request by Defendant would be treated in any other way. By ignoring these requests, the warden is inviting the Court's involvement. This Court will accept that invitation. The COVID-19 pandemic requires action, and the Court is not willing to wait.

*United States v. Dillard*, No. 15-00170, 2020 WL 2564638, at *2 (D. Idaho Apr. 27, 2020).

The defendant sufficiently presented his request for release to prison authorities, and he has waited more than 30 days for a favorable response, which at this point is unlikely reasonably to be expected. That is sufficient to satisfy the exhaustion requirement.

B. Extraordinary and Compelling Circumstances

The defendant has advanced sufficiently compelling circumstances to warrant a sentence reduction based on his age, which places him at serious risk from COVID-19 infection, and his personal circumstances. Contrary to the government's position, his release does not pose a sufficiently serious danger to the community to prohibit his release.

Other courts have documented the devastating effect that the novel coronavirus has visited upon society in general and the criminal justice system in particular. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death. Because there is no current vaccine, the Centers for Disease Control and Prevention ('CDC') recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

"[T]he crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted). It is widely recognized and publicly acknowledged that persons who are over 65 years old, as the defendant

is, face increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).

The government's position that the defendant is at low or no risk at FCI Gilmer merely because of the absence of presently active (identified) cases of infection is not reassuring in the context of the recent rapid acceleration of the pandemic among the public at large. Moreover, the BOP's admitted failure to implement any comprehensive prophylactic testing program calls into question the undoubtedly optimistic figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will inevitably contract COVID-19 going forward."). The government's laudatory recounting of

measures taken by BOP to address the pandemic also is less impressive in light of incidents such as the Bureau's ill-advised decision to transfer already infected inmates to FCI Gilmer for quarantine, which resulted in an outbreak there, at a facility that previous had managed to hold the disease at bay. *See* Times West Virginian (May 3, 2020) ("Four days after out-of-state inmates were transferred to W.Va. for quarantine, the first coronavirus case was confirmed."), https://www.timeswv.com/covid-19/four-days-after-out-of-state-inmates-were-transferred-to-w-va-for-quarantine-the/article_4d6d4ff6-8cdb-11ea-b700-b34865726b5b.html.

The defendant has described sufficiently circumstances to suggest that extraordinary and compelling circumstances warrant a sentence modification, based on the serious risk to his health posed by the ongoing (and recently accelerating) coronavirus pandemic.

Finally, it is fair to say that Williams "'is not a danger to the safety of any other person or to the community,' as is required for compassionate release." *Lassister*, No. 17-232, 2020 WL 3639988, at *2 n.1 ("Subsection (2) of U.S.S.G. § 1B1.13 establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."). Although Williams is a repeat offender, it is notable that the robbery for which he presently stands convicted was one of several, all of which involved the same coercive subterfuge of a toy pistol. While that circumstance alone does not entirely abate the concern for the community posed by his release, he has served a substantial portion of his custody term, and he asks to be released under home confinement, which will mitigate any threat to the community that he now may pose. While he certainly is not the most benign of offenders to come before the Court, neither is he among the most nefarious. Moreover, he apparently has been compliant while in prison and has made good progress in programming preparatory to his release, and his record reflects only one apparently minor infraction for "phone abuse" and "disruption," which was

committed soon after his commitment in April 2016.  *See* Progress Report dated Mar. 13, 2020, ECF No. 54-3, PageID.219.

The reduction of Williams's custodial sentence, however, will carry with it a modification of his supervised release term to address the deterrent and public-protection considerations of 18 U.S.C. § 3553(a).  Williams's re-integration into society should have a six-month buffer during which he will confined to his home.

III.

The defendant has established that he is at serious risk in a facility with known infections of COVID-19, and all of the other pertinent factors also weigh in favor of his release.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 49, 54) are **GRANTED**.

It is further **ORDERED** that the defendant's term of custody is **REDUCED** to time served.  Upon release, the defendant must self-quarantine for a period of two weeks.  Thereafter, his term of supervised release shall include a condition requiring him to be placed under home confinement for a continuous period of 180 days.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated:   July 17, 2020